<u>**NOT FOR PUBLICATION**</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

WEIGANG WANG and HAILONG YU,

    Plaintiffs,

v.

CHAPEI LLC d/b/a WOK EMPIRE and CHA LEE LO,

    Defendants.

Civil Action No. 15-2950 (MAS) (DEA)

**MEMORANDUM OPINION**

<u>**SHIPP, District Judge**</u>

    This matter comes before the Court upon Defendants Chapei LLC d/b/a Wok Empire ("Chapei") and Cha Lee Lo's ("Ms. Lo") (collectively, "Defendants") Motion for Judgment on Partial Findings[1] pursuant to Federal Rule[2] of Civil Procedure 52(c). (*See* July 10, 2019 Trial Tr. ("Trial Tr. II") 36:21-37:7; 95:4-5.) Plaintiffs Weigang Wang ("Mr. Wang") and Hailong Yu ("Mr. Yu") (collectively, "Plaintiffs") opposed. (*Id.* 43:17-45:3; 98:17-99:24.) The Court has carefully considered the parties' arguments and conducted a two-day bench trial. For the reasons

---

[1] Defendants moved for a judgment as a matter of law. (Trial Tr. II at 36:21-23; 95:4-5.) Rule 50, which governs motions for judgment as a matter of law, applies only to jury trials. *See* Fed. R. Civ. P. 50. Rule 52, which governs Motions for Judgment on Partial Findings, applies to bench trials. Fed. R. Civ. P. 52. Here, the Court conducted a bench trial, and therefore, the Court applies the standard set forth under Rule 52. *See also, Fairchild v. All Am. Check Cashing, Inc.*, 815 F.3d 959, 963 n.1 (5th Cir. 2016) ("[R]ule 50's standard does not apply to bench trials and, as such, Rule 52(c) [i]s the proper vehicle for rendering judgment . . . ."). Further, although Defendants moved for judgment as a matter of law, the Court refers to Defendants' Motion as a Motion for Judgment on Partial Findings.

[2] Unless otherwise noted, all references to Rules hereinafter refer to the Federal Rules of Civil Procedure.

set forth below, and other good cause shown, the Court grants in part and denies in part Defendants' Motion for Judgment on Partial Findings.

I. **Background**

Plaintiffs initiated this lawsuit against Defendants for wage and hour violations under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA") and New Jersey Wage and Hour Law, N.J.S.A. 34:11 to -56a, *et seq.* ("NJWHL"). The Court held a bench trial on July 9, 2019 and July 10, 2019. Plaintiffs called two witnesses as part of their case-in-chief—Mr. Wang and Mr. Yu. Defendants called one witness as part of their case-in-chief—Ms. Lo.

Defendants moved for a Judgment on Partial Findings at the close of Plaintiffs' case-in-chief. (Trial Tr. II 36:21-37:7.) The Court reserved on the Motion until the close of evidence as permitted under Rule 52(c) (*id.* 46:22-47:9), and Defendants renewed their Motion at the close of Defendants' case-in-chief (*id.* 95:4-5).

II. **Legal Standard**

Rule 52(c) provides:

> If a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue. The court may, however, decline to render any judgment until the close of evidence. A judgment on partial findings must be supported by findings of fact and conclusions of law as required by Rule 52(a).

"A judgment pursuant to Rule 52(c) is appropriate whe[n] the plaintiff fails to make out a prima facie case or whe[n] the Court determines that the preponderance of the evidence goes against the plaintiff's claim." *Lee v. Kim*, No. 12-316, 2013 WL 4522581, at *3 (E.D.N.Y. Aug. 27, 2013) (internal quotation marks and citation omitted); *cf. Vazquez v. Caesar's Paradise Stream Resort*, 524 F. App'x 831, 833 (3d Cir. 2013) (reviewing the district court's grant of a Rule 52(c) motion

2

that the defendant raised at the close of the plaintiff's case-in-chief and then renewed at the close of evidence). "Unlike Rule 50, under Rule 52(c), the court does not consider the evidence in the light most favorable to the non-moving party, but rather weighs the evidence, resolves any conflicts[,] and determines for itself where the preponderance of the evidence lies." *Kim*, 2013 WL 4522581 at *3 (internal quotation marks and citation omitted).

## III. Findings of Fact[3]

The following section constitutes the Court's factual findings only as it pertains to Defendants' Motion for Judgment on Partial Findings. *See* Fed. R. Civ. Proc. 52(c) (requiring the Court to base its disposition on findings of fact and conclusions of law as required by Rule 52(a)). The Court, therefore, only makes factual findings with respect to Plaintiffs' FLSA claims and declines to make factual findings with respect to Plaintiffs' NJWHL claims. The below Findings of Fact are derived from facts stipulated to in the final pre-trial order, as well as the parties' trial exhibits, and the witnesses' trial testimony.

### A. *Background of Chapei*

1. Chapei is a New Jersey limited liability company. (Final Pre-trial Order, Stipulated Facts, ECF No. 84.)

2. Ms. Lo has the authority to hire and fire Chapei employees, as well as determine Chapei employees' working hours and pay rates. (Trial Tr. II 61:5-19.)

---

[3] In evaluating the testimony of the witnesses appearing at trial, after the Court had the opportunity to hear their testimony and observe their demeanor, the Court undertook an individualized credibility assessment of each witness and assigned the appropriate weight to the testimony based on the Court's conclusions with respect to credibility. Such determinations are reflected in the factual findings.

3

3. During the time period in question, Chapei operated seven Chinese "fast food" restaurants, which were located inside ShopRite supermarkets. (July 9, 2019 Trial Tr. ("Trial Tr. I") 17:19-18:4.)

4. During the relevant time period, all Chapei locations were located within the following New Jersey towns: Aberdeen, Brick Township,[4] Lawrenceville, Middletown, Neptune, Somerville, and Toms River. (Trial Tr. I 16:22-17:1; Trial Tr. II 48:23-49:5.)

5. Chapei's vendors included Heng Long, located in Union, New Jersey, and Kenkau Market, located in Somerville, New Jersey.[5] (Trial Tr. II 58:9-59:4.)

6. In 2012, two employees worked at the following Chapei locations: Aberdeen, Brick Township, Lawrenceville, Middletown, and Somerville. (Trial Tr. II 63:2-21.)

7. At any given time in 2012, one or two employees worked at Chapei's Neptune location. (*Id.*)

8. At any given time in 2012, three employees worked at Chapei's Toms River location. (*Id.*)

9. The number of employees located at each Chapei location generally did not change between 2012-2015. (*Id.* 64:4-6.)

---

[4] In the course of translation, Brick Township was referred to as Bricktown. The Court refers to the location as Brick Township throughout this memorandum opinion.

[5] To the extent Plaintiffs contend that Chapei used vendors located in Flushing, New York, the Court finds such contentions are unsupported by the testimony and lack credibility. (*See, e.g.*, Trial Tr. II 30:16-24 ("Q. You testified that Chapei . . . would ask you to buy meat from Flushing? A. No, we told the boss how much we would need for the business and the boss would call for the food to be delivered to the store. Q. How do you know the meat was from Flushing? A. I don't know. The boss made the phone calls. The delivery company might be located in Flushing or somewhere else.").

### B. *Chapei's Payment System*

10. Chapei paid its employees by check once per month. (*Id.* 17:3-8; 58:9-14.)

11. Each paycheck covered the employee's work for the prior month. (Trial Tr. I 85:18-20.)

12. Chapei also paid its employees bonuses. Chapei did not have a predetermined figure for when it would provide employees bonuses; rather, Chapei paid its employees bonuses when there was a high sales volume, as an incentive to motivate employees to work hard, as well as when Ms. Lo had witnessed employees working particularly hard.[6] (Trial Tr. II 78:3-19.)

### C. *Mr. Wang's Employment History*

13. Mr. Wang worked at the Aberdeen and Middletown Chapei locations, and on four to five occasions, he worked at the Toms River location. (*Id.* 49:6-9; 49:24-50:3.)[7]

14. During his employment with Chapei, Mr. Wang resided in housing provided by Defendants, located at 400 Foothill Road in Bridgewater, New Jersey. (Trial Tr. I 29:1-2; 52:10-18; Trial Tr. II 52:15-18.)

---

[6] Plaintiffs both testified that Chapei would give them bonuses when Chapei grossed $4,000 in one week. (Trial Tr. I 27:17-23; Trial Tr. II 20:7-10.) Ms. Lo testified that there was no specific revenue amount that triggered a bonus, rather, Chapei would give its employees bonuses both when Chapei had a productive week and when Ms. Lo determined the employees worked particularly hard. (Trial Tr. II 78:3-19.) After having the opportunity to hear the witnesses' testimony and observe their demeanor at trial, the Court finds Ms. Lo's testimony more credible. The Court, therefore, declines to find that Chapei grossed $4,000 per week during the weeks in which Plaintiffs received bonuses because Chapei may have awarded employees bonuses for reasons other than sales, and Ms. Lo never testified that there was a $4,000 threshold for bonuses.

[7] Mr. Wang testified that he worked at all seven Chapei locations, whereas Ms. Lo testified that Mr. Wang predominantly worked at two locations, and on four to five occasions, worked at the Toms River location. (Trial Tr. I 18:5-7; Trial Tr. II 49:6-9; 49:24-50:3.) After having the opportunity to hear the witnesses' testimony and observe Mr. Wang's demeanor and recollection at trial, the Court finds Ms. Lo's testimony more credible.

### D. *Mr. Yu's Employment History*

15. Mr. Yu worked at the Brick Township, Somerville, and Aberdeen Chapei locations.[8] (Trial Tr. II 50:4-8.)

16. During his employment with Chapei, Mr. Yu resided in housing provided by Defendants, located at 400 Foothill Road in Bridgewater, New Jersey. (Trial Tr. I 86:12-15; Trial Tr. II 52:15-18.)

## IV. Conclusions of Law

### A. *Plaintiffs' FLSA Claim*

"The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013). Under the FLSA, an employer is required to pay his or her employees "who in any workweek engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce" a set minimum wage. 29 U.S.C. § 207(a). The employer must also pay "not less than one and one-half times the regular rate at which he [or she] is employed" for time worked in excess of forty hours per week. *Id.*

As a threshold matter, Plaintiffs must first establish that the FLSA applies to their claims. "An employer is subject to overtime and minimum wage provisions under the FLSA if 'either (1) its employees are engaged in commerce' or (2) the employer is an enterprise engaged in commerce." *Kim*, 2013 WL 4522581, at *3 (citation omitted). "These two distinct types of

---

[8] At trial, Mr. Yu testified that he worked at five of the seven Chapei locations. (Trial Tr. I 77:1-2; 96:24-97:1.) In an affidavit submitted to the Court, Mr. Yu certified that he worked at seven Chapei locations. (Defs.' Ex. 11 ¶ 9.) Ms. Lo, however, testified that Mr. Yu worked at the Brick Township, Somerville, and Aberdeen Chapei locations. (Trial. Tr. II 50:4-8.) Due to Mr. Yu's inconsistent statements, and after having the opportunity to hear the witnesses' testimony and observe Mr. Yu's demeanor at trial, the Court finds Ms. Lo's testimony more credible.

coverage are respectively referred to as 'individual coverage' and 'enterprise coverage.'" *Id.* (citation omitted).

Plaintiffs invoke both individual and enterprise coverage. (*See, e.g.*, Pls.' Pre-trial Br. 1-2, ECF No. 99.) For the reasons that follow, the Court finds Plaintiffs failed to produce sufficient evidence at trial to establish either coverage applies to their claims. The Court, accordingly, grants Defendants' Rule 52 motion, and dismisses Plaintiffs' FLSA claim.

1. Individual Coverage

"Individual coverage is limited to employees 'who in any workweek [are] engaged in commerce or in the production of goods for commerce.'" *Katz v. DNC Servs. Corp.*, No. 16-5800, 2018 WL 692164, at *4 (E.D. Pa. Feb. 2, 2018) (quoting 29 U.S.C. § 207(a)(1)); *see also Juan Su v. Guang Yang Li*, No. 10-5268, 2011 WL 3329882, at *3-4 (D.N.J. Aug. 1, 2011). "For individual coverage to apply under the FLSA, [the plaintiff] must have provided evidence at trial that [he or she] was (1) engaged in commerce or (2) engaged in the production of goods for commerce." *Thorne v. All Restoration Servs., Inc.*, 448 F.3d 1264, 1265-66 (11th Cir. 2006) (citing 29 U.S.C. § 207(a)(1)(2005)).

To be "engaged in commerce" under the FLSA, an employee "must be directly participating in the actual movement of persons or things in interstate commerce by[:] (i) working for an instrumentality of interstate commerce", such as working in the transportation or communication industry; or "(ii) . . . regularly using the instrumentalities of interstate commerce in his [or her] work, *e.g.*, regular and recurrent use of interstate telephone, telegraph, mails, or travel." *Thorne*, 448 F.3d at 1266 (citing 29 C.F.R. 776.23(d)(2)(2005)); *McLeod v. Threlkeld*, 319 U.S. 491, 493 (1943). The FLSA "does not include goods after their delivery into the actual physical possession of the ultimate consumer." 29 U.S.C. § 203(i). Thus, "when goods reach the customer for whom they were intended, the interstate journey ends and employees engaged in any

7

further intrastate movement of the goods are not covered under the [FLSA]." *Thorne*, 448 F.3d at 1267 (emphasis in original) (citing *McLeod*, 319 U.S. at 493).

As such, "[c]ourts distinguish between merchants who bring commerce across state lines for sale and the ultimate consumer, who merely purchases goods that previously moved in interstate commerce for intrastate use." *Id.* Merely purchasing or using an item that moved in interstate commerce does not establish that one is engaged in commerce. *See, id.*; *see also Dunlop v. Indus. Am. Corp.*, 516 F.2d 498, 499 (5th Cir. 1975) (holding that a garbage removal service—whose "only tie to interstate commerce" was that its employees used gasoline and oil that had been moved in interstate commerce—was the "ultimate consumer" and therefore individual coverage did not apply).

To be engaged in the production of goods for commerce, the employee's work must be "closely related and directly essential to the production of goods for commerce . . . ." *Id.* at 1268. The FLSA defines commerce as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b).

Plaintiffs contend they were engaged in the production of goods for commerce because they worked in Chapei locations that were located near the New York border, and therefore, it is likely they served New York customers. (*See* Pls.' Pre-trial Br. 1-2.) As an example, Plaintiffs state they worked at a Chapei location in Woodbridge, New Jersey, which is "only [five] or [six] miles from New York, and . . . only less than [two] miles from an interstate highway." (*Id.* at 1.) Defendants, however, argue that Plaintiffs failed to demonstrate that any of their customers were from outside of New Jersey, and emphasized that Plaintiffs were unable to recall the address of any Chapei locations. (Trial Tr. II 36:21-43:14; 95:4-97:10.) Defendants, therefore, aver that Plaintiffs failed to prove individual coverage. The Court agrees with Defendants.

8

As a preliminary matter, the Court reasserts that during the relevant time period, all Chapei locations were located within the following New Jersey towns: Aberdeen, Brick Township, Lawrenceville, Middletown, Neptune, Somerville, and Toms River. (*See supra* Findings of Fact ¶ 4.) Therefore, even assuming Plaintiffs' argument that a Chapei restaurant located five-to-six miles from the New York border could establish individual coverage, Plaintiffs failed to prove they worked at a Chapei location within that proximity. In fact, Plaintiffs were unable to provide any evidence regarding the geography of any Chapei restaurant, but rather, referred to each location by a store number that Chapei employees ascribed to each location. (*See, e.g.*, Trial Tr. I 19:3-5; 101:12.) Further, no witnesses testified about a Woodbridge, New Jersey Chapei location.

Moreover, Plaintiffs failed to provide any evidence or testimony that they performed any activity, or served any customer, outside of New Jersey. For example, all Chapei restaurants, including the restaurants at which Plaintiffs worked, were located in New Jersey. (Findings of Fact ¶ 4.) During the relevant time period, Plaintiffs resided in New Jersey (*id.* ¶¶ 14, 16), and Plaintiffs failed to prove that any of Chapei's vendors were located outside of New Jersey (*id.* ¶ 5).

Plaintiffs also argue that because they handled goods that traveled in interstate commerce, this is sufficient to establish individual coverage. (*See, e.g.*, Trial Tr. II 44:9-14.)[9] For example, Plaintiffs emphasize that they handled oyster sauce produced by the "foreign" company Lee Kum Kee. (Trial Tr. I 22:15-22.) Putting aside the fact that Plaintiffs failed to actually support their assertion that Lee Kum Kee is a "foreign" company, numerous courts have found that goods that may have traveled in interstate commerce, but are then solely used intrastate, lose their interstate

---

[9] To the extent Plaintiffs make this argument in support of enterprise coverage, for the reasons set forth below, Plaintiffs fail to establish enterprise coverage applies to their FLSA claims. *See infra* IV(A)(2).

character. *See, e.g., Monelus v. Tocodrian, Inc.*, 598 F. Supp. 2d 1312, 1314-15 (S.D. Fla. 2008) (collecting cases and finding that a cook, who worked at a local restaurant but may have handled food that traveled in interstate commerce, failed to establish individual coverage under the FLSA); *cf. Diaz v. Jaguar Rest. Grp., LLC*, 649 F. Supp. 2d 1343, 1355-59 (S.D. Fla. 2009) (discussing the statutory definitions of individual and enterprise coverage and noting that some courts have found that the individual coverage's ultimate consumer exception does not apply to enterprise coverage); *Trans. v. Thai*, No. 08-3650, 2010 WL 5232944, at *4 n.1 (S.D. Tex. Dec. 16, 2010).

Although the Court recognizes that Plaintiffs theoretically *could* have engaged in commerce or produced goods for commerce, the Court simply cannot find on the record before it that Plaintiffs presented any evidence or testimony supporting such a finding. The Court, accordingly, concludes that Plaintiffs failed to prove by a preponderance of the evidence that the FLSA's individual coverage applies to their claims.

2. Enterprise Coverage

"Enterprise coverage exists whe[n] the enterprise as a whole is 'engaged in commerce or in the production of goods for commerce.'" *Diaz*, 649 F. Supp. 2d at 1346 (quoting 29 U.S.C. § 207(a)(1)); *see also Genarie v. PRD Mgmt.*, No. 04-2082, 2006 WL 436733, at *5 (D.N.J. Feb. 17, 2006). To establish enterprise coverage, plaintiffs must demonstrate the enterprise satisfies two criteria. First, "the enterprise must have at least two employees that are (a) directly engaged in commerce, (b) in the production of goods for commerce, or (c) handle, sell or otherwise work on goods or materials that have been moved in or produced for commerce." *Id.* (citing 29 U.S.C. § 203(s)(1)(A)(i)). Second, an "enterprise's annual gross volume of sales made or business must be greater or equal to $500,000." *Id.* (citing 29 U.S.C. § 203(s)(1)(A)(ii)); *see generally Diaz*, 649 F. Supp. 2d at 1352-53 (discussing Congress's amendment to the FLSA, which included

10

adding "materials" to the enterprise coverage definition and how the term "materials" alters the interstate commerce analysis).

Here, the Court finds Plaintiffs failed to prove by a preponderance of the evidence that Chapei's gross annual sales was greater than or equal to $500,000. The sole evidence Plaintiffs presented to support such a conclusion was their own testimony regarding reports ShopRite would provide them of Chapei's revenue. (*See, e.g.*, Trial Tr. I 68:25-69:6.) Based upon their recollection of the figures provided in those reports, Plaintiffs testified as to the average daily and weekly revenue of all seven Chapei locations. (*See, e.g.*, Trial Tr. I 24:3-25:2; 81:15-83:8.)

Specifically, Mr. Wang initially testified that "ShopRite would give [Chapei employees] a figure for the previous year" and he "would get those figures and give them to the boss." (Trial Tr. I 23:22-25.) Although it is unclear, later, Mr. Wang appeared to testify that the ShopRite slips included Chapei's daily, weekly, and monthly revenue.[10] Mr. Yu also testified he was aware of Chapei's daily and weekly gross revenue, and stated:

> Every week the boss would have a meeting and apart [sic] some instructions. We would also talk about the work report, business report we got from ShopRite where it was kept listed the daily revenue and the business volume.

---

[10] Mr. Wang's testimony is as follows:

> Q. You testified about $500 daily revenue, $800 to $900 daily revenue and $3,000 weekly revenue and a $2,000 weekly revenue this morning. How do you calculate these numbers?
>
> A. I wouldn't be able to know the daily revenue, weekly, or even monthly because ShopRite listed the number on the printout.
>
> Q. Did you do your own calculations?
>
> A. I don't need to calculate. Anyways my calculations would not be useful. ShopRite did those.

(*Id.* 70:3-12.)

11

(*Id.* 80:11-14; *see also* Trial Tr. II 30:7-8 (agreeing that Mr. Yu saw slips that "show[ed] daily revenue").)

In contrast, Ms. Lo testified that ShopRite provided a daily sales report for some locations, but not all locations, and that she did not consistently receive those reports. (Trial Tr. II 75:8-22.) Ms. Lo also testified that after some time, ShopRite stopped automatically providing Chapei with those reports, "[s]o [she] would have to go to ShopRite [her]self" to retrieve them. (*Id.* 75:21-22.)

Plaintiffs' testimony regarding Chapei's daily and weekly sales revenue lacks credibility. First, the Court finds Plaintiffs' ability to recall two years-worth of daily and weekly sales figures implausible in light of both Plaintiffs' inability to recall other facts during the same time frame, such as the dates they worked together, the dates they worked at specific Chapei locations, and whether they signed certain documents. (*See, e.g.*, Trial Tr. I 38:2 ("I don't remember things. It happened so many years ago."; *see also* 34:1-3; 37:8-14; 48:7-14; 50:15-18; 60:6-24; 62:22-63:2; 95:25-96:2; 96:13-18; 104:14-105:11; Trial Tr. II 5:1-3.) Although memories certainly fade over time, it strikes the Court as contradictory that Plaintiffs were able to testify about Chapei's daily and weekly sales figures from 2012-2013, but were unable to recall other details from the same time-frame. Rather, having had the opportunity to hear Plaintiffs' testimony and observe their demeanor, the Court believes Plaintiffs merely guessed as to those daily and weekly figures in hindsight, and the Court is not persuaded by Plaintiffs' apparent extrapolation.

Further undermining Plaintiffs' credibility is that they testified about the daily and weekly revenue of all seven locations. Even assuming Plaintiffs received the ShopRite sales reports and were able to accurately recall the numbers within those reports, Plaintiffs' testimony is unreliable regarding sales figures from stores they did not work in and during times they did not work in those stores. Simply, each Plaintiff could only be in one place at one time, and therefore, at best,

Plaintiffs could only be aware of Chapei's sales figures with respect to the Chapei locations at which they worked and on the days that they worked there.

Plaintiffs, however, did not limit their testimony to the Chapei restaurants where they specifically worked and during times that they worked at those specific locations. This casts doubt upon Plaintiffs' overall testimony on the subject, and therefore, the record lacks credible evidence establishing that Chapei's gross annual sales were at least $500,000.

Therefore, because Plaintiffs' testimony regarding Chapei's sales figures lacks credibility, the Court finds Plaintiffs failed to meet their burden in establishing Chapei's gross annual sales were at least $500,000. As such, enterprise coverage does not apply to Plaintiffs' FLSA claims. The Court, consequently, grants Defendants' Motion for Judgment on Partial Findings and dismisses Plaintiffs' FLSA claims because Plaintiffs failed to establish individual or enterprise coverage.

### B.   *Plaintiffs' NJWHL Claims*

The Court must next consider whether it should exercise supplemental jurisdiction over Plaintiffs' NJWHL claim even though it dismisses Plaintiffs' FLSA claim. *See* 28 U.S.C. § 1367(c). "[I]n evaluating whether to exercise [supplemental] jurisdiction, a district court must weigh 'considerations of judicial economy, convenience and fairness to [the] litigants.'" *In re Paoli R.R. Yard Pcb Litig.*, 35 F.3d 717, 737 (3d Cir. 1994) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)).

Here, having already conducted a bench trial, the Court finds all three *Gibbs* factors weigh in favor of retaining jurisdiction; in fact, it would be both inefficient and unfair to the parties if the Court were to decline to exercise jurisdiction over Plaintiffs' NJWHL claim. *See, e.g., Salustio v. 106 Columbia Deli Corp.*, 264 F. Supp. 3d 540, 552 (S.D.N.Y. 2017) (retaining jurisdiction after dismissing the plaintiff's FLSA claims because: "It would be grossly inefficient to retry the [state

law] claims with the identical evidence in state court. It would be inconvenient to both sides. It would also be fundamentally unfair to require the parties to undergo the expense of a duplicative trial."). The Court, accordingly, retains jurisdiction over Plaintiffs' NJWHL claims.

Under the NJWHL, every employer must pay his or her employees a set minimum wage, as well as "not less than [one and one-half] times such employee's regular hourly rate for each hour of working time in excess of 40 hours in any week" unless an exception applies. N.J.S.A. 34:11-56a4(a), (b)(1). "The FLSA and [NJWHL] employ the same test for overtime claims." *Dare v. Comcast Corp.*, No. 09-4175, 2010 WL 2557678, at *2 (D.N.J. June 23, 2010) (citing *Cannon v. Vineland Hous. Auth.*, 627 F. Supp. 2d 171, 176 n.4 (D.N.J. 2008)). "Because the NJWHL overtime compensation and record-keeping requirements are modeled after and nearly identical to their analogous [FLSA] regulations, judicial interpretations construing [the] FLSA are applicable." *Cristomo v. Exclusive Detailing, Inc.*, No. 08-1771, 2010 WL 2640183, at *5 (D.N.J. June 28, 2010); *see also Marx v. Friendly Ice Cream Corp.*, 695 A.2d 1301, 1314 (N.J. Super. App. Div. 2005).

In support of their Motion for Judgment on Partial Findings, Defendants argue that Plaintiffs "failed to provide any evidence to the Court for the Court to ... determine what ... exactly [were] the number of hours they previously worked and how much they were paid." (Trial Tr. II 97:18-21.) Defendants also argue that Plaintiffs' testimony lacked credibility and Plaintiffs submitted fraudulent affidavits to the Court. (*Id.* 97:15-98:10.) In support of their position, however, Plaintiffs testified that they worked approximately sixty hours per week and have submitted paychecks that Chapei issued to them. (Trial Tr. I 51:19-23; 64:17-18; Trial Tr. II 9:11-13.)

The Court finds that reasonable minds may differ as to whether a preponderance of the evidence establishes a prima facie case for Plaintiffs' NJWHL claims. *See, e.g., LaMarca v.*

*United States*, 31 F. Supp. 2d 110, 123-24 (E.D.N.Y. 1998) (denying the plaintiff's motion for judgment as a matter of law and stating that because the court reserved on the plaintiff's Rule 52(c) motion until after trial, "there is no practical difference between deciding the motion and rendering an opinion on the case"). Additionally, due to the parties' deficient pre-trial submissions regarding Plaintiffs' NJWHL claims, the Court finds it premature to render a verdict on the NJWHL claims at this juncture without the benefit of the parties' post-trial briefs. The Court, therefore, requires the parties to file post-trial submissions addressing Plaintiffs' NJWHL claims so the Court may make additional findings of fact and conclusions of law.

### V. Conclusion

The Court grants Defendants' Motion for Judgment on Partial Findings as to Plaintiffs' FLSA claims. The Court retains jurisdiction over Plaintiffs' state law claims and denies Defendants' Motion as to those claims. The parties must submit post-trial submissions addressing Plaintiffs' NJWHL claims so that the Court may make additional findings of fact and conclusions of law, and ultimately render a verdict on Plaintiffs' NJWHL claims.

/s/ Michael A. Shipp
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

Dated: 7/19/19