UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| WEIGANG WANG and HAILONG YU,<br><br>Plaintiffs,<br><br>v.<br><br>CHAPEI LLC d/b/a WOK EMPIRE and CHA LEE LO,<br><br>Defendants. | Civil Action No. 15-2950 (MAS) (DEA)<br><br>**OPINION AND FINAL JUDGMENT** |

**SHIPP, District Judge**

This matter comes before the Court upon Plaintiffs Weigang Wang ("Mr. Wang") and Hailong Yu's ("Mr. Yu") (collectively, "Plaintiffs") claims seeking unpaid wages under the Fair Labor Standards Act ("FLSA") and New Jersey Wage and Hour Law ("NJWHL") against Defendants Chapei LLC d/b/a Wok Empire ("Chapei") and Cha Lee Lo ("Ms. Lo") (collectively, "Defendants"). The Court conducted a two-day bench trial (*see* Trs., ECF Nos. 110, 111) and granted Defendants' Motion for Judgment on Partial Findings as to the FLSA claims (ECF No. 113). The parties submitted post-trial briefs with proposed findings of fact and conclusions of law on the remaining NJWHL claims. (ECF Nos. 114, 115.) The Court now states its findings of fact and conclusions of law[1] and enters final judgment on the merits of Plaintiffs' NJWHL claims.

---

[1] To the extent the findings of fact may be considered conclusions of law, they will be deemed conclusions of law. Similarly, to the extent that matters expressed as conclusions of law may be considered findings of fact, they will be deemed findings of fact.

After careful consideration of the parties' submission, evidence introduced at trial, and the applicable law, the Court enters judgment in favor of Plaintiffs.

I. **BACKGROUND**

A. **Jurisdiction**

This action involved claims arising under federal law. The Court had original jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiffs' NJWHL claims pursuant to 28 U.S.C. § 1367. Although the Court dismissed Plaintiffs' FLSA claims after trial, the Court retains supplemental jurisdiction over Plaintiffs' NJWHL claims pursuant to 28 U.S.C. § 1367. (July 19, 2019 Mem. Op. 13–15, ECF No. 112.) Venue of this action appropriately lies in the District of New Jersey pursuant to 28 U.S.C. § 1391(b) because Defendants reside in New Jersey. The parties do not dispute subject matter jurisdiction or venue.

B. **Procedural History**

Plaintiffs initiated this lawsuit against Defendants for wage and hour violations under the FLSA, 29 U.S.C. §§ 201, *et seq.* and NJWHL, N.J. Stat. Ann. §§ 34:11 to -56a. The Court held a bench trial from July 9 through July 10, 2019. Plaintiffs testified as the only witnesses in their case-in-chief. Defendants called one witness as part of their case-in-chief—Ms. Lo.

Defendants moved for a Judgment on Partial Findings at the close of Plaintiffs' case-in-chief. (July 10, 2019 Trial Tr. ("Trial Tr. II") 36:21–37:7, ECF No. 117.) The Court reserved on the Motion until the close of evidence as permitted under Federal Rule of Civil Procedure 52(c) (*id.* 46:22–47:9), and Defendants renewed their Motion at the close of Defendants' case-in-chief (*id.* 95:4–5). The Court granted in part Defendants' Motion for Judgment on Partial Findings as to Plaintiffs' FLSA claims. (July 19, 2019 Mem. Op.) The Court denied Defendants' Motion as to Plaintiffs' NJWHL claims. (*Id.*)

## II. FINDINGS OF FACT

The below Findings of Fact are derived from facts stipulated to in the Final Pretrial Order, (ECF No. 84), as well as the parties' trial exhibits, and the witnesses' trial testimony.[2]

### A. Background of Chapei

1. Chapei is a New Jersey limited liability company. (Final Pretrial Order § 3, Stipulation of Facts, ECF No. 84.)

2. Ms. Lo has the authority to hire and fire Chapei employees, as well as to determine Chapei employees' working hours and pay rates. (Trial Tr. II 61:5–19.) Ms. Lo maintains limited employment records for employees of Chapei, such as their resumes and records of payrates, but no records of employees' working hours. (Trial Tr. II 61:14–62:5.)

3. During the time period in question, Chapei operated seven Chinese "fast food" restaurants, which were located inside ShopRite supermarkets. (July 9, 2019 Trial Tr. ("Trial Tr. I") 17:19–18:4, ECF No. 116.) Typically, each Chapei location was staffed by two employees, a chef and a helper. (Trial Tr. I 69:11–15; Trial Tr. II 20:12–14, 63:6–64:9.)

4. During the relevant time period, all Chapei locations were located within the following New Jersey towns: Aberdeen, Brick Township,[3] Lawrenceville, Middletown, Neptune, Somerville, and Toms River. (Trial Tr. II 48:23–49:5.)

---

[2] In evaluating the testimony of the witnesses appearing at trial, after the Court had the opportunity to hear their testimony and observe their demeanor, the Court undertook an individualized credibility assessment of each witness and assigned the appropriate weight to the testimony based on the Court's conclusions with respect to credibility. Such determinations are reflected in the factual findings. The Court repeats findings of fact from its July 19, 2019 Memorandum Opinion where relevant.

[3] In the course of translation, Brick Township was referred to as Bricktown. The Court refers to the location as Brick Township throughout this Opinion.

3

### B. Chapei's Payment System

5. Chapei paid its employees by check once per month. (Trial Tr. II 17:3–8.) The checks were paid from the account of "Chapei, LLC," located at 400 Foothill Road in Bridgewater, New Jersey, and were signed by Ms. Lo. (*See generally* Pls.' Ex. 1.)

6. Each paycheck covered the employee's work for the prior month. (Trial Tr. I 85:18–20.) Employees' pay did not vary based on the number of hours they worked per month, except deductions were made for missing a whole day of work. (Trial Tr. I 63:16–64:14; Trial Tr. II 87:3–5.) Upon hiring, there was no agreement on how many hours per week employees were expected to work; and employees were aware of the "character of th[e] work and its pay." (Trial Tr. II 77:23–78:2; *see* Trial Tr. I 63:16–64:14.)

7. Chapei also paid its employees bonuses. Chapei did not have a predetermined figure for when it would provide employees bonuses; rather, Chapei paid its employees bonuses when there was a high sales volume, as incentive to motivate employees to work harder, as well as when Ms. Lo had witnessed employees working particularly hard.[4] (Trial Tr. II 78:3–19.) Bonuses were not paid as overtime compensation. (Trial Tr. II 56:14–25.)

### C. Mr. Wang's Employment History

8. Mr. Wang worked for Chapei from March 2012 to July 2013,[5] and from September 2013 through March 2015. (Trial Tr. I 17:15–18, 20:4–16, 45:20–46:16, 50:2–3.)

---

[4] Plaintiffs testified that Chapei would give them bonuses when Chapei grossed $4,000 in one week. (Trial Tr. I 27:17–23.) Ms. Lo testified that there was no specific revenue amount that triggered a bonus; rather, Chapei would give its employees bonuses both when Chapei had a productive week and when Ms. Lo determined the employees worked particularly hard. (Trial Tr. II 78:3–19.) After having the opportunity to hear the witnesses' testimony and observe their demeanor at trial, the Court finds Ms. Lo's testimony more credible.

[5] This period is exclusive of July 2013.

9. Throughout Mr. Wang's employment with Chapei, he worked six days per week. (Trial Tr. I 21:7–9, 50:19–23; Trial Tr. II 78:20–25.)

10. Throughout Mr. Wang's employment with Chapei, he was not afforded fixed breaks or off-duty time that would affect computation of his hours worked per day. (Trial Tr. I 21:16–22:8.)

11. During his employment with Chapei, Mr. Wang resided in housing provided by Defendants, located at 400 Foothill Road in Bridgewater, New Jersey (the "Dorm"). (Trial Tr. I 29:1-2, 52:10-18; Trial Tr. II 52:15-18.)

12. Mr. Wang worked at the Aberdeen and Middletown Chapei locations, and on four to five occasions, he worked at the Toms River location. (Trial Tr. II 49:6-9; 49:24-50:3.)[6]

13. Mr. Wang worked at the Middletown location from March 2012 through April 2013. (Trial Tr. II 49:8–23.)[7]

14. Mr. Wang was paid $1,700 for the month of April 2013. (May 5, 2013 Check, Pls.' Ex. 1, D027.)

15. Mr. Wang worked at the Aberdeen location from May 2013 through June 2013. (Trial Tr. I 19:20–20:6, 48:15–20.)

---

[6] Mr. Wang testified that he worked at all seven Chapei locations, whereas Ms. Lo testified that Mr. Wang predominantly worked at two locations, and on four to five occasions, worked at the Toms River location. (Trial Tr. I 18:5–7; Trial Tr. II 49:6–9, 49:24–50:3.) After having the opportunity to hear the witnesses' testimony and observe Mr. Wang's demeanor and recollection at trial, the Court finds Ms. Lo's testimony more credible.

[7] Mr. Wang testified that he worked at the Neptune location from June 2012 to May 2013. (Trial Tr. I 19:18–19.) Ms. Lo testified that Mr. Wang did not primarily work at the Neptune location, but at the Middletown location, then the Aberdeen location before returning to the Middletown location. (Trial Tr. II 49:6–23.) The Court finds Ms. Lo's testimony on Mr. Wang's work locations more credible. Because Mr. Wang and Mr. Yu both worked together at the Aberdeen location in May and June 2013, (Trial Tr. I 19:20–20:8, 96:9–12), the Court finds that Mr. Wang worked at the Middletown location in April 2013 before going to the Aberdeen location, then returned to the Middletown location after he resumed work with Chapei.

5

16. Mr. Wang was paid $1,800 for the month of May 2013. (June 3, 2013 Check, Pls.' Ex. 1, D027.)

17. Mr. Wang was paid $1,800 for the month of June 2013. (July 1, 2013 Check, Pls.' Ex. 1, D027.)

18. Mr. Wang worked at the Middletown location from mid-September 2013 to March 2015. (Trial Tr. I 49:21–50:3.)

19. Mr. Wang was paid $840 for two weeks of work in September 2013. (Oct. 5, 2013 Check, Pls.' Ex. 1, D027.)

20. Mr. Wang was paid $1,900 for the month of October 2013. (Nov. 5, 2013 Check, Pls.' Ex. 1, D028.)

21. Mr. Wang was paid $1,900 for the month of November 2013. (Dec. 5, 2013 Check, Pls.' Ex. 1, D029.)

22. Mr. Wang was paid $1,900 for the month of December 2013. (Jan. 5, 2014 Check, Pls.' Ex. 1, D030.)

23. Mr. Wang was paid $1,900 for the month of January 2014. (Feb. 5, 2014 Check, Pls.' Ex. 1, D030.)

24. Mr. Wang was paid $1,710.10 for the month of February 2014. (Mar. 5, 2014 Check, Pls.' Ex. 1, D030.)

25. Mr. Wang was paid $1,900 for the month of March 2014. (Apr. 5, 2014 Check, Pls.' Ex. 1, D030.)

26. Mr. Wang was paid $1,900 for the month of April 2014. (May 5, 2014 Check, Pls.' Ex. 1, D031.)

27. Mr. Wang was paid $2,000 for the month of May 2014. (June 5, 2014 Check, Pls.' Ex. 1, D031.)

28. Mr. Wang was paid $2,050 for the month of June 2014. (July 5, 2014 Check, Pls.' Ex. 1, D031.)

29. Mr. Wang was paid $2,050 for the month of July 2014. (Aug. 5, 2014 Check, Pls.' Ex. 1, D031.)

30. Mr. Wang was paid $2,218 for the month of August 2014. (Sept. 5, 2014 Check, Pls.' Ex. 1, D032.)

31. Mr. Wang was paid $2,340 for the month of September 2014. (Oct. 5, 2014 Check, Pls.' Ex. 1, D032.)

32. Mr. Wang was paid $2,430 for the month of October 2014. (Nov. 4, 2014 Check, Pls.' Ex. 1, D032.)

33. Mr. Wang was paid $2,356.70 for the month of November 2014. (Dec. 5, 2014 Check, Pls.' Ex. 1, D032.)[8]

---

[8] Plaintiffs also assert that Mr. Wang was paid $2,200 for the months of December 2014, January 2015, and February 2015. (*See* Pls.' Post-Trial Br. 6.) Plaintiffs support this assertion with citation to their Complaint. (Pls.' Post-Trial Br. 6.) Because this fact was not elucidated through testimony or documentary evidence at trial, the Court is unable to find any evidence of pay for Mr. Wang's work from December 2014 through February 2015.

Additionally, Plaintiffs assert that "Mr. Wang was paid $1,312.64 for the month of March 2015," citing to a check introduced as evidence at trial. (*See* March 16, 2015 Check, Pls.' Ex. 1, P000001.) In the Final Pretrial Order, however, it states that Mr. Wang intended to prove that he was paid $2,200 per month from January 2015 through the end of his employment and that—in addition to this pay for March 2015—he was "paid a bonus of $1,312.64 on March 16, 2015." (Final Pretrial Order, Pls.' Contested Facts ¶¶ 31–32.) It appears that Mr. Wang's pay of $1,312.64 was not his only compensation for March 2015 and finding this pay as his only pay would inflate the computation of unpaid wages and overtime compensation. The Court, accordingly, finds that Plaintiffs have not produced sufficient evidence to show the amount and extent of work or compensation as a matter of just and reasonable inference for March 2015. *See Martin v. Selker Bros., Inc.*, 949 F.2d 1286, 1297 (3d Cir. 1991).

D.  Mr. Yu's Employment History

34. Mr. Yu worked at the Brick Township, Somerville, and Aberdeen Chapei locations.[9] (Trial Tr. II 50:4–8.)

35. Throughout Mr. Yu's employment with Chapei, he worked six days per week. (Trial Tr. II 9:11–22.)

36. Throughout Mr. Yu's employment with Chapei, he was not afforded fixed breaks or off-duty time that would affect computation of his hours worked per day. (Trial Tr. I 21:16–22:8.)

37. During his employment with Chapei, Mr. Yu resided in the Dorm located at 400 Foothill Road in Bridgewater, New Jersey. (Trial Tr. I 86:12–15; Trial Tr. II 52:15–18.)

38. Mr. Yu worked for Chapei from August 2010 through April 2013.[10] (Trial Tr. I 76:12–15, 92:10–94:16.)

39. Mr. Yu worked at the Aberdeen location in April 2013. (Trial Tr. I 102:8–22.)

---

[9] At trial, Mr. Yu testified that he worked at five of the seven Chapei locations. (Trial Tr. I 77:1–2; 96:24–97:1.) In an affidavit submitted to the Court, Mr. Yu certified that he worked at seven Chapei locations. (Defs.' Ex. 11 ¶ 9.) Ms. Lo, however, testified that Mr. Yu worked at the Brick Township, Somerville, and Aberdeen Chapei locations. (Trial. Tr. II 50:4–8.) Due to Mr. Yu's inconsistent statements, and after having the opportunity to hear the witnesses' testimony and observe Mr. Yu's demeanor at trial, the Court finds Ms. Lo's testimony more credible.

[10] Mr. Yu testified that he stopped working for Chapei in July 2013. (Trial Tr. I 76:14–15.) Mr. Yu, however, was also a plaintiff in an FLSA action filed in the United States District Court for the District of Maryland. (Defs.' Ex. 9; Trial Tr. I 92:10–13.) In the complaint for the Maryland matter, Mr. Yu stated that the Maryland entity employed him full-time, beginning in May 2013. (Defs.' Ex. 9 ¶ 20.) Mr. Yu has been paid damages as a result of the Maryland matter. (Trial Tr. I 88:13–22.) At the instant trial, Mr. Yu conceded that he did not work two full-time jobs at the same time. (Trial Tr. I 94:5–12.) Plaintiffs' Exhibit 2, which consists of Mr. Yu's paychecks from Chapei, includes a check dated July 1, 2013. (Pls.' Ex. 2, D018.) Because each paycheck covered the employee's work from the previous month (*see* Findings of Fact ¶ 6), there is strong evidence that Mr. Yu stopped working in June 2013. Principles of judicial estoppel, however, require that the Court acknowledge that the District of Maryland relied upon Mr. Yu's statements that he began working for the other company in May.

40. Mr. Yu was paid $2,000 for the month of April 2013. (May 5, 2013 check, D017, Pls.' Ex. 2.)

### E. Transportation Times to Each Store[11]

41. The hours employees worked varied based on the Chapei location the employees worked at; and employees would work fewer hours at locations that were farther from the Dorm. (Trial Tr. I 63:5–15, 105:17–24.)

42. Employees would begin work upon arriving at their work location. (Trial Tr. II 27:1–3, 27:17–21, 84:19–21.)

43. Employees would end work approximately when the van arrived to pick them up from each work location. (Trial Tr. II 28:25–29:15.)

44. The vans transporting employees from the Dorm to the various Chapei locations left the Dorm at 8:45 a.m. each day. (Trial Tr. II 53:9–15, 55:22–24.)

45. The larger, 15-seat van would transport employees from the Dorm in Bridgewater to the Aberdeen location, then the Middletown location, then the Neptune location, then the Brick Township location. (Trial Tr. II 53:13–15, 55:1–12.)

46. The journey from Bridgewater to Aberdeen was approximately 35 minutes. (Trial Tr. II 53:16–19.) The van would arrive at the Aberdeen location at approximately 9:20 a.m. (Trial Tr. II 84:12–18.) The van would pick employees up from the Aberdeen location at approximately 7:25 p.m. (Trial Tr. II 86:20–23.)

47. The journey from Aberdeen to Middletown was approximately 20 minutes. (Trial Tr. II 55:3–5.) The van would arrive at the Middletown location at approximately 9:40 a.m. (Trial

---

[11] In considering the transportation times from the Dorm to each store, the Court found that the reported times were largely similar. Because Ms. Lo drove a van, the Court found her testimony to be the most credible. (Trial Tr. II 54:2–3.)

Tr. II 84:22–85:5.) The van would pick employees up from the Middletown location at approximately 7:10 p.m. (Trial Tr. II 86:12–19.)

48. There was no relevant travel time to Chapei's Toms River location. (Trial Tr. II 56:9–13.)

## III. PARTIES' POSITIONS

Plaintiffs argue that they have shown by a preponderance of the evidence, through testimony at trial and Plaintiffs' exhibits, that Plaintiffs' pay did not meet the minimum wage, that Chapei failed to pay overtime compensation for their work over forty hours per week, and that Ms. Lo is individually liable as an employer. (*See* Pls.' Post-Trial Br. 1, ECF No. 114.)

Defendants argue that Plaintiffs lacked credibility and specificity in their testimony at trial and are accordingly unable to establish essential information such as precisely when and where Mr. Wang or Mr. Yu worked. (Defs.' Post-Trial Br. 2–3.) Defendants further argue that Plaintiffs "each had significant memory issues[] and were unable to provide reliable testimonies about the necessary facts." (*Id.* at 8.) Defendants argue this unreliability prevents Plaintiffs from meeting their burden to produce "sufficient evidence to show the amount and extent of [the] work as a matter of just and reasonable inference." (*Id.* at 11 (citing *Anderson v. Mr. Clemens Pottery Co.*, 328 U.S. 680, 687–88 (1946)).)

## IV. CONCLUSIONS OF LAW

1. Under the NJWHL, claims for unpaid wages and overtime compensation are subject to a two-year statute of limitations. *Buchspies v. Pfizer, Inc.*, No. 18-16083, 2019 WL 5078853, at *4 (D.N.J. Oct. 10, 2019).[12] "A claim for unpaid [minimum wages or] overtime

---

[12] Following the bench trial, and long after Plaintiffs filed their Complaint, the NJWHL statute of limitations was extended to six years. *See Buchspies*, 2019 WL 5078853, at *4 n.6. There is no indication that the statute extending the limitations period should be given retroactive effect, *see id.*, and the parties do not dispute this.

compensation accrues at each regular payday immediately following the work period during which the services were rendered and for which the overtime compensation claim is claimed." *Id.* (internal quotation marks and citation omitted). Plaintiffs filed their Complaint on April 24, 2015. (Compl., ECF No. 1.) Plaintiffs may not recover unpaid minimum wages or overtime compensation prior to April 24, 2013.

2. "The definitions for 'employer' and 'employee' under the FLSA and NJWHL are virtually identical." *Rong Chen v. Century Buffet and Rest.*, No. 09-1687, 2012 WL 113539, at *2 (D.N.J. Jan. 12, 2012). An "employer" under the NJWHL may be "any individual, partnership, association, corporation, . . . or any person or group of persons acting directly or indirectly in the interest of an employer in relation to an employee." N.J. Stat. Ann. § 34:11-56a1(g). "The NJWHL definition of 'employer,' like the FLSA, allows for individual liability and is to be given a liberal construction." *Juan Su v. Guang Yang Li*, No. 10-5268, 2011 WL 3329882, at *4 (D.N.J. Aug. 1, 2011).

3. Defendants are employers under the NJWHL. To determine whether an entity or individual is an employer under the NJWHL, courts consider "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.* Because Ms. Lo and Chapei had the authority to hire and fire employees, set employees' hours and pay, set the location that employees worked, managed employees' hours based on the van's drop-off and pick-up times, and maintained the employee records, Defendants are employers under the NJWHL. (*See* Findings of Fact ¶¶ 2, 41–44.)

4. Plaintiffs are both employees under the NJWHL. "When determining whether an employment relationship exists under the [NJWHL], courts must consider the totality of the

circumstances and look to the 'economic realities' of the relationship." *Rong Chen*, 2012 WL 113539, at *2. Courts consider the following factors:

> (1) the degree of the alleged employer's right to control the manner in which the work is to be performed; (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; (3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; (4) whether the service rendered requires a special skill; (5) the degree of permanence of the working relationship; [and] (6) whether the service rendered is an integral part of the alleged employer's business.

*Id.* at *3. The Court concludes that these factors weigh in favor of an employment relationship. Plaintiffs exercised little autonomy in their workweek: Defendants managed even elementary aspects of Plaintiffs' work such as housing, transportation, and the hours worked. Although Plaintiffs had the opportunities for bonuses depending on a location's revenue and whether they were observed to be working hard, bonuses had little to do with their managerial skill. (*See* Findings of Fact ¶¶ 6–7.) Plaintiffs did not manage or employ their own helpers or invest in their own equipment. Plaintiffs had a high degree of permanence: they worked six days per week for Chapei, and their employment lasted years. (*See* Findings of Fact ¶¶ 8, 9, 35, 38.) Plaintiffs' services were essential to the business, as each was part of a two-person team that prepared and served the food in each location. (Findings of Fact ¶ 3.) Finally, considering the economic realities of the situation, Plaintiffs were dependent upon Defendants in a manner that weighs in favor of finding an employment relationship: Plaintiffs worked full-time, could not manage to work other jobs, and depended upon Defendants for housing and transportation to and from work. (*See* Findings of Fact ¶¶ 6, 9, 11, 35, 37, 38, 41–48.) These factors weigh in favor of an employment relationship.

5. "Because the NJWHL overtime compensation and minimum wage requirements are modeled after and nearly identical to their analogous [FLSA] regulations, judicial

interpretations construing the FLSA are applicable." *Harris v. Scriptfleet, Inc.*, No. 11-4561, 2011 WL 6072020, at *4 (D.N.J. Dec. 6, 2011); *see also Marx v. Friendly Ice Cream Corp.*, 882 A.2d 374, 379 (N.J. Super Ct. App. Div. 2005).

6. Where an employer fails to keep employment records,

> [A]n employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result may be only approximate.

*Martin v. Selker Bros., Inc.*, 949 F.2d 1286, 1297 (3d Cir. 1991) (internal quotation marks omitted) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88 (1946)). "The burden of any consequent imprecision from the absence of an employer's records must be borne by that employer." *Id.* "[D]amages need not be proved with precision where that is impractical or impossible. . . . [M]ere uncertainty as to the amount will not preclude recovery." *Chavez-Hernandez v. Eagle Steel and Iron, LLC*, No. UNN-L-002714-17, 2019 WL 3069527, at *6 (N.J. Super. Ct. May 21, 2019) (alterations and omission in original) (quoting *Iliadis v. Wal-Mart Stores, Inc.*, 922 A.2d 710, 722 (N.J. 2007)).

7. Under the NJWHL, every employer must pay his or her employees a set minimum wage, unless an exception applies. N.J. Stat. Ann. § 34:11-56a4(a). "[A]ll exemptions to [N.J. Stat. Ann. § 34:11–56a4] should be construed narrowly and . . . the employer has the obligation to prove that an employee meets the criteria for exemption." *Marx*, 882 A.2d at 378–79. Plaintiffs do not meet any of the criteria for exempt employees, and Defendants do not attempt to show Plaintiffs are exempt in post-trial briefing. *See* N.J. Stat. Ann. §§ 34:11-56a4(c)–(g).

8. The minimum wage in New Jersey for 2013 was $7.25 per hour. *See* 46 N.J. Reg. 839(a) (May 19, 2014) (stating that New Jersey's minimum wage was set at the federal minimum hourly wage of $7.25).

9. The minimum wage in New Jersey for 2014 was $8.25 per hour. 46 N.J. Reg. 839(a) (May 19, 2014).

10. The minimum wage in New Jersey for 2015 was $8.38 per hour. 46 N.J. Reg 2113(a) (Oct. 20, 2014).

11. Under the NJWHL, every employer shall "pay each employee not less than [one and one-half] times such employee's regular hourly rate for each hour of working time in excess of 40 hours in any week" unless an exception applies. N.J. Stat. Ann. § 34:11-56a4(b)(1); *Chavez-Hernandez*, 2019 WL 3069527, at *4. Mr. Wang and Mr. Yu are not exempt employees, and Defendants do not attempt to show that Plaintiffs are exempt. (Conclusions of Law ¶ 7); *see Marx*, 882 A.2d at 378–79. To prevail on an overtime compensation claim under the NJWHL, Plaintiffs must show that they worked in excess of forty hours a week as well as some uncompensated time in excess of those forty hours. *Abarca v. KC Consulting Grp., Inc.*, No. 16-213, 2018 WL 2215516, at *4 (D.N.J. May 14, 2018).

12. "Where the salary covers a period longer than a workweek, such as a month, it must be reduced to its workweek equivalent. A monthly salary is subject to translation to its equivalent weekly wage by multiplying by [twelve] (the number of months) and dividing by [fifty-two] (the number of weeks)." 29 C.F.R. § 778.113.

13. "'Regular hourly wage' means the amount that an employee is regularly paid for each hour of work as determined by dividing the total hours of work during the week into the employee's total earnings for the week, exclusive of overtime premium pay." N.J. Stat. Ann. § 34:11-56a1(e).

14. Overtime wages are calculated based on the regular hourly wage. *Qu Wang v. Fu Leen Meng Rest. Ltd. Liab. Co.*, No. 16-8772, 2018 WL 1027446, at *4 n.3 (D.N.J. Feb. 23, 2018) (citing 29 C.F.R. § 778.109). "Where employees were paid a monthly salary, the regular rate is calculated by dividing the salary by 40 hours a week. Lawful pay is then calculated by taking the greater of . . . Plaintiff's actual regular rate, or the proper pay based on a regular rate at the . . . minimum [wage]." *Id.* (internal citation omitted) (citing 29 C.F.R. §§ 778.109, 778.109-113(a)).

15. "All the time [an] employee is required to be at his or her place of work or on duty shall be counted as hours worked." N.J. Admin. Code § 12:56–5.2. The Court concludes that Plaintiffs, as a matter of just and reasonable inference, have shown that they were required to be at their place of work or on duty from the time the van dropped them off at their work location to the time the van picked them up at the work location. (*See* Findings of Fact ¶¶ 10, 42, 43.)

16. At the Aberdeen location, Plaintiffs worked approximately ten hours and five minutes per day, or sixty hours and thirty minutes per week. (*See* Findings of Fact ¶ 46.)

17. At the Middletown location, Plaintiffs worked approximately nine hours and thirty minutes per day, or fifty-seven hours per week. (*See* Findings of Fact ¶ 47.)

18. Because Plaintiffs have shown they worked at least fifty-seven hours per week, no matter whether they worked at the Aberdeen or Middletown location, during the relevant periods, (*see* Conclusions of Law ¶¶ 16–17), and that their pay did not vary based on the number of hours worked during the month, (*see* Findings of Fact ¶ 6), Plaintiffs have shown that they worked at least forty hours per week and that they were not paid overtime compensation for hours worked in excess of forty hours per week. (*See* Conclusions of Law ¶ 11.)

19. For the period of April 24, 2013 through April 30, 2013, Mr. Wang's weekly wage was $392.31.[13] Mr. Wang's regular hourly rate for this period was $6.88.[14] This rate is below $7.25, the statutory minimum wage for 2013. (*See* Conclusions of Law ¶ 8.) Per week, the minimum wage shortfall was $20.94.[15] Mr. Wang's overtime rate for this period was $10.88.[16] Per week, the additional shortfall from lost overtime compensation was $61.63. Combined, the weekly minimum wage shortfall and lost overtime compensation amount to $82.57 per week. Because this period contains one week, the NJWHL damages for this period are $82.57.

20. For the period of May 1, 2013 through June 30, 2013, Mr. Wang's weekly wage was $415.38. Mr. Wang's regular hourly rate for this period was $6.87. This rate is below $7.25, the statutory minimum wage for 2013. (*See* Conclusions of Law ¶ 8.) Per week, the minimum wage shortfall was $23.24. Mr. Wang's overtime rate for this period was $10.88. Per week, the additional shortfall from lost overtime compensation was $74.31. Combined, the weekly minimum wage shortfall and lost overtime compensation amount to $97.55 per week. Because this period contains eight weeks and five days, the NJWHL damages for this period are $850.10.

---

[13] The Court computes the weekly wage according to 29 C.F.R. § 778.113 by multiplying the monthly wage by twelve and dividing by fifty-two. (Conclusions of Law ¶ 12.) For example, here, ($1,700 x 12) / 52 = $392.31.

[14] The Court computes the regular hourly rate according to N.J. Stat. Ann. § 34:11-56a1(e). (Conclusions of Law ¶ 13.) For example, here, $392.31 / 57 hours = $6.88 per hour.

[15] The Court computes the weekly minimum wage shortfall by subtracting the employee's weekly wage from the weekly wage that would have been earned had the employee been paid a regular hourly rate equivalent to the minimum wage. For example, ($7.25 x 57) - $392.31 = $20.94.

[16] The Court computes the overtime rate by multiplying the greater of Plaintiff's regular rate or the proper pay based on a regular rate at the minimum wage by one and one-half. (Conclusions of Law ¶ 14.) For example, here, $7.25 x 1.5 = $10.88.

21. For the period of September 16, 2013 through September 30, 2013, Mr. Wang's weekly wage was $387.69.[17] Mr. Wang's regular hourly rate for this period was $6.80. This rate is below $7.25, the statutory minimum wage for 2013. (*See* Conclusions of Law ¶ 8.) Per week, the minimum wage shortfall was $25.56. Mr. Wang's overtime rate for this period was $10.88. Per week, the additional shortfall from lost overtime compensation was $61.63. Combined, the weekly minimum wage shortfall and lost overtime compensation amount to $87.18 per week. Because this period contains two weeks and one day, the NJWHL damages for this period are $186.82.

22. For the period of October 1, 2013 through December 31, 2013, Mr. Wang's weekly wage was $438.46. Mr. Wang's regular hourly rate for this period was $7.69. This rate is greater than $7.25, the statutory minimum wage for 2013. (*See* Conclusions of Law ¶ 8.) Accordingly, there is no minimum wage shortfall for this period. Mr. Wang's overtime rate for this period was $11.54. Per week, the additional shortfall from lost overtime compensation was $65.38. Because this period contains thirteen weeks and one day, the NJWHL damages for this period are $859.34.

23. For the period of January 1, 2014 through January 31, 2014, Mr. Wang's weekly wage was $438.46. Mr. Wang's regular hourly rate for this period was $7.69. This rate is below $8.25, the statutory minimum wage for 2014. (*See* Conclusions of Law ¶ 9.) Per week, the minimum wage shortfall was $31.79. Mr. Wang's overtime rate for this period was $12.38. Per week, the additional shortfall from lost overtime compensation was $70.13. Combined, the weekly minimum wage shortfall and lost overtime compensation amount to $101.91 per week. Because this period contains four weeks and three days, the NJWHL damages for this period are $451.33.

---

[17] The Court computes the weekly wage for this two-week period using the semi-monthly salary method in 29 C.F.R. § 778.113(b), by multiplying the semi-monthly salary by twenty-four and dividing by fifty-two.

24. For the period of February 1, 2014 through February 28, 2014, Mr. Wang's weekly wage was $394.64. Mr. Wang's regular hourly rate for this period was $6.92. This rate is below $8.25, the statutory minimum wage for 2014. (*See* Conclusions of Law ¶ 9.) Per week, the minimum wage shortfall was $75.61. Mr. Wang's overtime rate for this period was $12.38. Per week, the additional shortfall from lost overtime compensation was $70.13. Combined, the weekly minimum wage shortfall and lost overtime compensation amount to $145.74 per week. Because this period contains four weeks, the NJWHL damages for this period are $582.95.

25. For the period of March 1, 2014 through April 30, 2014, Mr. Wang's weekly wage was $438.46. Mr. Wang's regular hourly rate for this period was $7.69. This rate is below $8.25, the statutory minimum wage for 2014. (*See* Conclusions of Law ¶ 9.) Per week, the minimum wage shortfall was $31.79. Mr. Wang's overtime rate for this period was $12.38. Per week, the additional shortfall from lost overtime compensation was $70.13. Combined, the weekly minimum wage shortfall and lost overtime compensation amount to $101.91 per week. Because this period contains eight weeks and five days, the NJWHL damages for this period are $888.10.

26. For the period of May 1, 2014 through May 31, 2014, Mr. Wang's weekly wage was $461.54. Mr. Wang's regular hourly rate for this period was $8.10. This rate is below $8.25, the statutory minimum wage for 2014. (*See* Conclusions of Law ¶ 9.) Per week, the minimum wage shortfall was $8.71. Mr. Wang's overtime rate for this period was $12.38. Per week, the additional shortfall from lost overtime compensation was $70.13. Combined, the weekly minimum wage shortfall and lost overtime compensation amount to $78.84 per week. Because this period contains four weeks and three days, the NJWHL damages for this period are $349.13.

27. For the period of June 1, 2014 through July 31, 2014, Mr. Wang's weekly wage was $473.08. Mr. Wang's regular hourly rate for this period was $8.30. This rate is greater than $8.25, the statutory minimum wage for 2014. (*See* Conclusions of Law ¶ 9.) Accordingly, there is

no minimum wage shortfall for this period. Mr. Wang's overtime rate for this period was $12.45. Per week, the additional shortfall from lost overtime compensation was $70.55. Because this period contains eight weeks and five days, the NJWHL damages for this period are $614.76.

28. For the period of August 1, 2014 through August 31, 2014, Mr. Wang's weekly wage was $511.85. Mr. Wang's regular hourly rate for this period was $8.98. This rate is greater than $8.25, the statutory minimum wage for 2014. (*See* Conclusions of Law ¶ 9.) Accordingly, there is no minimum wage shortfall for this period. Mr. Wang's overtime rate for this period was $13.47. Per week, the additional shortfall from lost overtime compensation was $76.33. Because this period contains four weeks and three days, the NJWHL damages for this period are $338.02.

29. For the period of September 1, 2014 through September 30, 2014, Mr. Wang's weekly wage was $540. Mr. Wang's regular hourly rate for this period was $9.47. This rate is greater than $8.25, the statutory minimum wage for 2014. (*See* Conclusions of Law ¶ 9.) Accordingly, there is no minimum wage shortfall for this period. Mr. Wang's overtime rate for this period was $14.21. Per week, the additional shortfall from lost overtime compensation was $80.53. Because this period contains four weeks and two days, the NJWHL damages for this period are $345.11.

30. For the period of October 1, 2014 through October 31, 2014, Mr. Wang's weekly wage was $560.77. Mr. Wang's regular hourly rate for this period was $9.84. This rate is greater than $8.25, the statutory minimum wage for 2014. (*See* Conclusions of Law ¶ 7.) Accordingly, there is no minimum wage shortfall for this period. Mr. Wang's overtime rate for this period was $14.76. Per week, the additional shortfall from lost overtime compensation was $83.62. Because this period contains four weeks and three days, the NJWHL damages for this period are $370.33.

31. For the period of November 1, 2014 through November 30, 2014, Mr. Wang's weekly wage was $543.85. Mr. Wang's regular hourly rate for this period was $9.54. This rate is

greater than $8.25, the statutory minimum wage for 2014. (*See* Conclusions of Law ¶ 9.) Accordingly, there is no minimum wage shortfall for this period. Mr. Wang's overtime rate for this period was $14.31. Per week, the additional shortfall from lost overtime compensation was $81.10. Because this period contains four weeks and two days, the NJWHL damages for this period are $347.58.

32. Mr. Wang's total damages from April 2013 to March 2015 for his minimum wage and overtime compensation claims is $6,266.15. (Conclusions of Law ¶¶ 19–31.)

33. For the period of April 24, 2013 through April 30, 2013, Mr. Yu's weekly wage was $461.54. Mr. Yu's regular hourly rate for this period was $7.63. This rate is greater than $7.25, the statutory minimum wage for 2013. (*See* Conclusions of Law ¶ 8.) Accordingly, there is no minimum wage shortfall for this period. Mr. Yu's overtime rate for this period was $11.54. Per week, the additional shortfall from lost overtime compensation was $78.19. Because this period contains one week, the NJWHL damages for this period are $335.12. Because this is the only period for which Mr. Yu can recover on his NJWHL claims, Mr. Yu's total damages are $335.12.

V. **CONCLUSION**

For the foregoing reasons, the Court concludes that Plaintiffs prevail on their NJWHL claims. An order consistent with this Opinion will be entered.

s/ Michael A. Shipp<br>
MICHAEL A. SHIPP<br>
UNITED STATES DISTRICT JUDGE